The Honorable, the judges of the United States Court of Appeals for the Eighth Circuit. Hear ye, hear ye, hear ye, the United States Court of Appeals for the Eighth Circuit is now in session. All persons having business before this Honorable Court may now draw near and they will be heard. God save the United States and this Honorable Court. Good morning. You may be seated. The court has four cases scheduled for oral argument this morning as set forth on the calendar. Counsel for the first case may come forward. Madam Clerk, would you please call the first case for argument. The first case for argument this morning, Wednesday, June 10, 2026, is 25-30-44, Eastern Missouri, Michael Slack v. City of St. Louis et al. All right. Mr. Wheaton, we'll hear from you when you're ready. Thank you, Judge. May it please the Court. Good morning, Your Honors. My name is Andrew Wheaton and I represent the appellants in this case, the City of St. Louis, and its former mayor and former director of the Department of Public Safety, who were both sued in their individual capacities here for an alleged constitutional and statutory violation. This is a qualified immunity appeal. In this case, the individual defendants are absolutely entitled to qualified immunity, taking the facts in the light most favorable to the plaintiff and disregarding conclusory allegations as the court must. We'll start with the first prong of the qualified immunity analysis here, which is whether there was any underlying statutory or constitutional violation under these facts, and there was not. Why wasn't there? Because Mike Slack was not rejected in May of 2022 as a police chief candidate, and he remained under consideration as a police chief candidate until an employment decision was made in December of 2022, that year. So, Counsel, in May of 2022, after O'Toole retired, wasn't he the only qualified candidate? And wasn't he entitled to promotion under your own rules? He was not entitled to promotion under the city's rules, no. He was not the only candidate, at least I believe as of May 18th, because Mike Slack was a candidate at the time that the alleged announcement to reopen the search and to consider additional candidates was made. So at that time, no, he was not the only candidate. Lawrence O'Toole was a candidate also, which kind of leans into why the city has pointed to Eveland and these other cases that talked about how the city has no obligation to make an employment decision at any particular time with respect to an employment list. So that was the reason for the city bringing forward those particular cases. With respect to the plaintiff's claim in this case, and because there was no rejection, and because he remained under consideration until he was notified of his rejection in December, at which time another white male was selected, the plaintiff hinges his claim on the Supreme Court's decision in Ricci for Giuseppe Fustano, which is an opposite and has no applicability here. And I'll note at the outset that Ricci declined to consider or decide whether what happened in that case was a violation of the Equal Protection Clause and did not consider the 1983 claim. It only considered the Title VII claim, which lends itself towards the application of qualified immunity in the first instance. But aside from that, by plaintiff's own admission and position, his claim is, my test results were discarded. That's what happened in Ricci. All of the test results were thrown out, and that operated as a de facto rejection of the firefighter applicants in that case. Why? Because the only way to remain under consideration is to be on the list, is to have taken a test and to have your score be considered. And if the score is thrown away, you're rejected. That's not what happened here. There's no allegation in plaintiff's complaint that the test score was thrown out. Quite the opposite. The plaintiff concedes and admits in this case, my test score was certified. I got a 100 on the test. There's no allegation that that test score was thrown out the door. The only fair inference here is that the test score was simply weighed against additional candidates, which is no harm at all. Certainly not clearly established constitutional or statutory harm under these facts. So that's a critical distinction. It's one that the district court overlooked. And the district court also overlooked the critically different facts in this case that demonstrate no actionable harm. The firefighters in Ricci, were the plaintiffs rejected or were they allowed continued consideration under a different construct? They were rejected. The only way for them to again become under consideration was to retake presumably a different, very strenuous test. One that they had just taken at great personal expense and cost and studied for for months with the Supreme Court noting that some firefighters had studied 8 to 13 hours per day for months and expended money in support of their efforts. Only to have their efforts nullified by having the test results thrown out. So the answer is no. The firefighter plaintiffs in Ricci were rejected. They were necessarily not under consideration for promotions the moment that the city threw out the test results. That's the distinction. And it's one, again, the district court overlooked. So the harm in that case was that these firefighters invested for months in becoming applicants and then were rejected de facto by throwing out test results. Here, it's quite different. In fact, it's the opposite. The test results were certified. There's no allegation they were thrown away. There's no allegation that Mr. Sack had to restart or reapply even. His application remained under consideration. In fact, he was selected as a finalist and later interviewed near the end of 2022. Is there an allegation that the standards were changed so the threshold was lower? Not with respect to the test, but with respect to the minimum qualifications, yes. The only result of that is that When Ricci talks about interfering with the expectations of the applicants, would that be on point? No, Your Honor. It's distinguishable in our view because with respect to reducing the minimum qualifications, and the allegation here was that instead of needing 10 years of command experience, people could apply with five, the only result is that more people's test scores are weighed against Sack's test score, which again is no harm at all and is at the very least distinguishable from Ricci's such that qualified immunity should at least apply to the individual defendants in this case. Counsel, explain to me how it's no harm at all when he had to go back through the process a second time with additional competitors. Well, I'll start by saying he did not have to go through the process a second time. I know that Mr. Sack asserted that in his brief, but there's no factual allegation to support, again, that he had to reapply, that he had to go and test again. It's not in his complaint. So I guess I'll take issue with the premise in that he did not have to go through the process again. Was there a process? Was there a second process? Not one that was specifically alleged in the complaint. Well, didn't they pick somebody? They did, yeah. Wasn't that pursuant to a process? Well, yes, Your Honor. Didn't Sack go through that process? Well, the only process that's alleged, as I understand it, is that he interviewed, and he interviewed later. He was going to interview anyway. I think that was the premise of the question. He went through the second process. But go ahead with your answer to whether that's a harm. So with respect to whether it's a harm, the answer is no. The process that he went through was being interviewed, which was what he wanted all along. So it's no additional output or burden on him to interview, except that he was interviewed later than he would have liked, which I'm sure happens all the time for job applicants in the private and public sector. I'm sure it happens all the time that applicants would love to be promoted earlier or have a decision made earlier. He doesn't assert that his harm was that I had to wait for my interview, right? I mean, he asserts the harm is that they changed the qualifications and lowered them, that they lowered them outside of the identified process before the first application process, and that one of the things was is that at the end of that process, the chief would be selected from a list of finalists that was determined by a process. You got to the point where the process had determined who those finalists were, and then you changed the rules to allow other people to be considered because the mayor stated that they didn't have enough diversity. That's the harm he's alleging. And I find it hard to believe that you can say that the second process doesn't change the lay of the land any or change expectations. So I'm really asking, why am I seeing this wrong? It changes only in that there's additional candidates that he's being compared against, first of all. And with respect to the qualified immunity analysis, I would submit that it's fair and reasonable for a public official, assuming that either the mayor or the director of public safety had any role in making the decisions at issue, which is not sufficiently alleged and is belied by the city's charter. If I'm a public official and assuming I have the responsibility to decide, should I throw out this list or should I consider additional candidates, and I know about Ricci, I could very reasonably think, well, I'm not excluding SAC. He's still under consideration. He may still get promoted. He's still on the list. I'm going to keep his test score. That's very different from what happened in Ricci. So I think a reasonable official could think, there's nothing unlawful about considering more people before I make an employment decision. Certainly it happens all the time in the private sector out of necessity. Doesn't that depend on the reason? If the reason is race-based, isn't that what Ricci is all about? Well, that gets us into the kind of Muldrow analysis. Is there a material harm or now is there some harm? I think on that point, we would say that there has to be an actionable harm and there was not here. So while the reason plays a role when you have an actionable harm, our position is there was no actionable harm in this case. Certainly not one under the pre-Muldrow standard, which was the one that was law at the time that these public officials acted. So we would submit on that point that yes, the reason would play a role in a typical case where there was an actionable harm, but there wasn't one in this case. So with that, Your Honors, unless there are any immediate questions, I'll reserve the remainder of my time. Very well. Thank you for your argument. Ms. Petruska, we'll hear from you. May it please the Court. My name is Lynette Petruska and I am here on behalf of Appellee Michael Sack. You're familiar with the standard for a notice to dismiss. Notice pleading is still applicable. To survive, Sack need only allege sufficient facts, except it is true, that show the claim for relief is plausible on its face. And a claim is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. And in that regard, the complaint is read as a whole. And that's important because claims were knocked out of the complaint, but the complaint still has to be read as a whole. I want to start by focusing on the facts because the reply brief focuses on that so much, and I want to be able to establish that there is individual liability here. And I'll start with the... The other thing you have to factor in is qualified immunity. Okay, okay, okay. If I can focus in on just the qualified immunity and you believe there's sufficient facts to hold the individuals liable. I'm not saying I think anything. I'm just saying that you started out by arguing the motion to dismiss standard, and I was pointing out that there's a defense lodged here of qualified immunity. So the pleading has to show not only the normal 12B6 threshold, but it has to allege the violation of a clearly established right. So I was hoping you'd frame your argument in that context. What I was going to do is I'm concerned that... I think Jones is liable. She makes two admissions. I'm not... And she makes that announcement in January. She makes the other announcement in May. I'm reopening the search. And I think it's important, and one of you asked a question about that. At the time the search is reopened in May, it's significant because the complaint alleges that the lawsuit against SAC... I'm sorry, O'Toole's lawsuit had already been settled. So there was only one qualified candidate at that time under the city's civil service rules. As long as you have a qualified candidate, the process can go forward. So that's not grounds for not selecting a qualified candidate. And the timing is significant because two days after they settled with O'Toole, and he retires from the police department, so he can't sue them anymore for discrimination and retaliation when he's not picked a second time, they announced... Well, actually Mayor Jones announces, I'm opening a new search. And again, those are admissions. I don't think I have to prove anything more related to Jones because she admits a race-based reason for reopening the search. How that gets imputed to Isom is that he is the decision maker. And he's the only one that can interview the candidates and select a chief to finalize the process. And that never happens. The city argues that he was interviewed at a later stage, so there wasn't really any issue or problem. But what happens is there's a town hall meeting. Sack never alleges because he was never interviewed by Isom as part of the established process. That never happened. And a new chief is selected outside the civil service rules. And that's alleged also in the petition, that the chief was selected outside the civil service rules. At the time there were rumblings, as there are in the city of St. Louis, that that had occurred. Since the complaint was filed, an employee of the Department of Personnel filed a whistleblower complaint. And that whistleblower complaint specifically alleges that the new candidates were never tested. I never got the chance to amend. I understand that. I was going to say, I never got a chance to amend because the motion to dismiss was filed before. But we'd request leave to amend if the complaints found deficient. And remember too that Jones changes the personnel director to make this process happen. She has a qualified African American personnel director that she removes and then puts somebody else in place. And I think it's reasonable to infer that all that happens because the personnel director won't agree to abolishing this process or amending it for her race-based reason and in violation of the civil service rules. But then focusing on the qualified immunity issue, although if I may real quickly, in terms of SAC and Jones, or Jones and Isom's involvement, again there's a conspiracy here. And the court found that there was sufficient evidence of a conspiracy between the two of them, just not sufficient evidence of a conspiracy between them and the outsiders. And that's why they were entitled to qualified immunity on the conspiracy claim. I think Mr. Wheaton argues, counsel, that Ricci is not enough to put them on notice, that their actions were unconstitutional, and to make it clearly established law. Thank you. And that's because they try to frame the Ricci question different than I think what the court was saying. I mean, the court didn't just say you can't invalidate test results. It said, once the process has been established and employers have made clear their selection criteria, they may not then invalidate the test results, thus upsetting the employee's legitimate expectation not to be judged on the basis of race. Now again, in that particular case, it was the test results that changed the process. But that doesn't mean it's limited to that. The selection criteria was established. It clearly identified what was supposed to happen. Applications, which the city could leave open as long as they wanted to get a diverse pool of applicants. Testing, interviews, selection. There's no allegation in the new complaint that the other candidates tested, because there's no evidence that they did. But there is the allegation again that the final chief was selected outside the civil service rules. And in terms of the qualified immunity issue, this court has made clear that 1981 and equal protection cases are analyzed under the same framework as Title VII. So I would argue that there is sufficient notice that the actions of the defendants violated all of the three claims remaining. Equal protection, Title VII in 1981. What would be the adverse employment action? I understand Mr. Wheaton to argue that under the pre-Muldrow standard there was no adverse action here because Mr. Sack was still under consideration throughout the process. The second process. I would make two arguments in response to that. This court has regularly held that the failure to promote is an adverse employment action. And the failure to promote happens in May of 2022 when the searches reopen and new standards are established to draw in more applicants. So that's the adverse employment action. That's a failure to promote. The petition alleges that as a result of that he lost increased wages and increased retirement benefits. And loss of wages has always been found to be an adverse employment action as well. And even if he had been promoted ultimately he would have still lost wages and increased pension benefits as a result of that May 2022 decision. In the May decision making process if there had been an interview at that point it had to have some meaning, right? And so the failure to promote could have been based on... Let's say you walk into the interview and you give a series of answers that indicate that you would set up a police department that would routinely engage in exercises and practices that might violate the rights of the citizens, right? You'd be disqualified, right? Now you're asking us to presume that he would have been qualified at the end of that May period when no interview had actually taken place. Because you're saying the failure to promote is complete at that point because he should have been the only qualified candidate. But that requires us to presume that he would have remained qualified following the interview. Can we do that? Actually I would argue it the other way, Judge. Under the process if there are qualified candidates yes, they have to promote. If they deem the candidates to be unqualified then they can reopen the process. I would say that under your scenario what happens is you have a candidate who's been qualified by the civil service process that disqualifies himself based on giving bad answers. So you don't have a race-based reason there. What we know we have here is we've got a whole process being reopened with different criteria specifically because the mayor doesn't like the race of the two finalists who are both qualified and we know they're qualified. Again, they could disqualify themselves in the interview process by doing a bad interview. But we know they're qualified at that stage because the city's own personnel department has said they're qualified. That's how they moved into the testing phase. And then they got put on what was called the list of eligibles. And that list of eligibles is who's supposed to be selected from. So I would say in your scenario I wouldn't be here because then it's SAC's own fault that he lost the job. He didn't lose it because of his race. Now, your allegation is that he was entitled to be promoted in May on what basis? Under the city's rules or under what basis was he entitled to be promoted? I would never say that somebody's entitled to be promoted because I don't think any promotion is entitled. He was entitled to a process and he was entitled to a process that was free of race-based discrimination. I thought your argument but then you said his harm is a failure to promote which I thought implied that he was entitled to be promoted. But now you're saying no, he was just entitled to a certain process. What I'm saying is that the adverse employment action happened in May when they reopened the search because if they had completed... Because they changed the process. Right. How is that an adverse employment action? If they had completed the process and he hadn't won and they reopened it, obviously I wouldn't be here. But it's identical to Ricci, I would say. They reopened it for an explicitly race-based reason, lowered the qualifications and there's evidence in the petition again that the city initially announced that they were only going to interview three finalists. Again, I'm at the complaint stage. I don't know if Sack was excluded and he got brought back in because they decided it would be so obvious that they discriminated against him if they didn't interview him or who was excluded. But I think it's reasonable to infer that Sack wasn't one of the three finalists for the public forum because if he was going to be considered for chief, they would have given him the job and not reopened the process. I mean, so I would say that. In terms of... They try to say that Ricci is only about test results, but it's about a promotion process. The court is clear that you can't change the process once it's established for explicit race-based reason. So if you can invalidate the test results, how is it any different to seek additional applicants using different and lower qualifications for a race-based reason? I believe one of you asked that question before. I say, how is that different? I don't think Ricci says you can only non-invalidate tests. You can't change the process or an established criteria of the process for a race-based reason. And... To the extent that they try to argue that Ricci, the firefighters, were irrefutably foreclosed from the opportunity to compete. The only thing they were irrefutably foreclosed from doing was competing in a process pursuant to the established criteria because of their race. And that's the same thing that happened to SAC. I'm not saying they made them take a different test. They didn't. But the process was established and then they said, we're not going to follow this process anymore because we don't like the race-based result or the results of the finalists, the race of the finalists. I think the city admits that this was a race-based employment decision. They stopped doing it before this court, but before the district court, they argued over and over again that diversity in an applicant pool is a good thing. And I don't disagree with that. Diversity is a good thing. But it's not a good thing after you've already had your finalists and you start over to try and get more people of color in your process. And that's the difference here. And that's why I would argue that Ricci applies and the law is clearly established. Thank you, Your Honors. Well, thank you for the argument. Mr. Wheaton, we'll hear a rebuttal. Thank you, Your Honors. I'll start where Ms. Pietruszka did with respect to the personal involvement or, more accurately, the complete lack thereof that was alleged regarding Jones and Isom in this case. With respect to Isom, again, the only factual allegation regarding his involvement here was that he was the Director of Public Safety, which is meaningless in this analysis. The Court's well aware that liability under 1983 is individual. You must assess their conduct individually. The individual defendants take this claim very seriously. They're being labeled racist in the United States Court of Appeals and they're entitled to be put on notice of what specific personal conduct they engaged in that violated any clearly established right. There's a complete absence of any supporting factual allegations in this case. I'll move... You're skipping over Jones' personal involvement? No, I was going to say I'm going to move to Jones with respect to... You're saying she had no personal involvement in restarting the process? Well, I'll say... In the criteria? That with respect to Jones, there's only, at most, two facts, I suppose, regarding her involvement. One is the statement that she made in January 2022. Which was what? Which was to the effect of the city is... I had two white male candidates to consider. The city is more diverse than that. Our police department is more diverse than that. That's the only fact that's alleged regarding Jones' involvement and it's in January of 22. Aside from the May decision to reopen the search and it's not altogether clear who the plaintiff says made that decision. Counsel, at the motion to dismiss stage, aren't the plaintiffs entitled to reasonable inferences from the facts? From the facts? Sure. But there's no reasonable inference that could be drawn to pin clearly established liability on either Jones or Isom in this case. And with respect to Jones, what I just... So there's no inference to be drawn that what the mayor said or did caused the process to be changed? Is that really... Is that what you're saying? Caused the process to be changed? Well... I thought that's the allegation that the mayor changed the process and you're saying there's no allegation that she was personally involved in that? That's correct, is my understanding. Why do you think the process was changed? All I can do is infer from the complaint and the light most favorable to the plaintiff that the process was reopened and it's alleged to have been reopened by collectively the defendants. That's the allegation. But who made that decision is not alleged. And as I understand the plaintiff's position, they're relying on this pseudo-conspiracy theory to say, well, they all were in on it. But this court has rejected similar theories for lack of requisite fact pleading in multiple cases and we briefed those on reply. And that's the situation here. Now to suggest now or infer that the mayor exerted some influence over the director of the Department of Personnel to make the decision, and I'll say that as a matter of law, under the Article 18 of the city's charter, the authority to make that decision with regard to reopening the process is the exclusive purview of the director of the Department of Personnel, who is not an individual defendant in this case. And the court can take judicial notice of that fact. I'll say with respect to the statute of limitations issues, they're unworkable in this case. And if I understood the plaintiff correctly in what was just said and briefed, January of 2022 is when Jones allegedly announced that she was not going to consider or select SAC. And under their theory, that's when the claim accrues and it's time bar under that construction, which illustrates the unworkable expansion of Title VII liability that the plaintiff is asserting here. If there are any further questions, I'm happy to answer them. All right. Very well. Thank you for your argument. Thank you to both counsels. The case is submitted and the court will file a decision in due course.